Good morning, may it please the court. My name is James Yoon, counsel for plaintiff appellant Randy Langley. I'd like to reserve two minutes for rebuttal. Mr. Langley's section 1983 claim against Mr. Colegio was tried before a jury. Because the parties here in this case, Mr. Langley and Mr. Colegio, were the only two witnesses to the facts underlying that claim, the trial turned on a credibility dispute. And unfortunately during the trial, evidence concerning the nature of Mr. Langley's probation violation for possession of methamphetamine and spousal battery was admitted in violation of the federal rules of evidence. Admitting that evidence was plain error, your honor, and the court should vacate the judgment and remand for a new trial. Under plain error review, the court looks at four different problems. That there was an error, that the error was obvious, that the error affects the substantial rights of the family, that the error seriously affects the fairness, integrity, and public reputation of the judicial proceedings. Mr. Langley, in his opening and reply brief, discussed how each of these four problems have been met and satisfied in this case, your honor. Under the first problem, that there was an error. This court has unambiguously required that prior bad act evidence admitted pursuant to 404B have a logical connection to a material fact in this case. Evidence concerning Mr. Langley's probation violation for meth possession and spousal battery have no logical connection to any material fact in this case, nor does Mr. Klage's counsel argue otherwise in the answering brief. And because this court has unambiguously required it through numerous cases and precedents that were existing before this case was tried, the error was obvious. The issue here is whether Mr. Langley, in his cross-examination of the parole officer, asked him questions regarding Langley's own character, whether he had ever had any difficulty or any fights with the parole officer, whether he was on redirect, Mr. Larvera said, brought out the two spousal reports and the methamphetamine. The issue here is whether, I think the main issue here is is whether Langley opened the door. Now we understand he was pro se, but taking a look at the transcript, do you think it's plain error that to come to the conclusion that Langley did open the door? I know your honor, Mr. Langley did not open the door in this case. That doctrine has been narrowly interpreted by this court. Not whether you think so or whether I think so, but whether the district court does not think so. Your honor, this court has clearly established through its prior precedents under signed, excuse me, under signed that only evidence necessary to give a false impression that might have resulted from an earlier admission could be admitted under the opening the door doctrine. As you stated, Judge Bea, Mr. Langley did elicit testimony concerning his prior relationship with his probation officer. He asked whether they were in any boxing match in the past. He also elicited testimony concerning whether Mr. Baca, the probation officer, knew of any prior uncooperative behavior or altercations with the police that Mr. Langley was involved in. The defense counsel in the trial court did not dispute the veracity of these statements. Instead, he took the opportunity to bring forth evidence to the jury that had no logical connection to a material fact in this case. He elicited facts asking about the circumstances of these prior probation violations concerning meth possession as well as foul bill batteries, the fact that Mr. Langley battered his wife. That, your honor, has no, does not have any connection to the testimony that was elicited during the cross-examination by Mr. Langley. So let me, I want to follow up on that. Suppose we agree with you, because the opening the door doctrine, I agree with you, you're saving him lots. It only opens the door to clear up a false impression. But suppose we were to find that the admission of the probation, the nature of the probation violations was plain error. Does that, would that error alone require reversal in light of all the other evidence of criminal history in this case? Your honor, we are proceeding on the fact that the evidence concerning the nature of probation violation, the concerning the meth possession as well as the foul bill batteries constitute the plain error in this case. We are also representing a separate argument that has based on related facts as well as the same legal standard concerning attorney misconduct and the references that attribute that can be shown to prove some pattern of attorney misconduct in this case, your honor. What about the comment that he made about his, it's not my MO? Your honor, I think the context of the specific transcript, your honor, that question regarding the hit MO came immediately after Mr. Langley asking about whether he had any prior altercation or uncooperative behavior with the police. So the MO point is asking about Mr. Langley's prior police interaction, uh, that was in the record or that Mr. Baca, the probation officer knew of, to which Mr. Baca answered again, entered the negative and defense counsel did not challenge again, the veracity of statements by bringing in evidence, for example, whether Mr. Langley did have a prior uncooperative behavior with the police through that process or through that direct examination that immediately followed Mr. Langley direct examination. Your honor, under the third prong, if you have no further questions about this opening the door doctrine, I'd like to move on to the third prong of plain error review. First, that under the third prong of plain error review, the error must affect the substantial rights of the litigant and substantial rights of the litigant are affected when there are reasonable, when there's a reasonable probability that the outcome of the proceedings have been affected in this case, in this case, the jury burden. And this court has  is when the jury's invited to make a wrongful inference about a key issue in this case. And the key issue, as I alluded to earlier, your honor, is Mr. Langley and Mr. Collegio credibility because the two witnesses were the only witnesses to the fact underlying that claim, the case really did turn on credibility. There was the facts regarding what Mr. Langley was doing immediately proceeding. The use of the taser was highly disputed. Mr. Langley was walking towards him. Mr. Langley testified that he was standing still with his hands raised. The contemporaneous police report that was admitted to evidence that something altogether different saying that Mr. Langley was walking backwards. And if the jury were to police Mr. Collegio testimony, then Mr. Collegio prevailed in trial. And the problem with this particular error here is that there were no specific or limiting instructions provided concerning the lawful purposes of this kind of evidence could be useful. May I ask you a question about that, Mr. Yoon? Yes, your honor. A question about that. It is never easy for a trial judge to try a pro se, um, case. And the this was only a two day case. What is your view of the impact of the limiting instruction that the judge did give at the end of the case? I agree that there weren't contemporaneous limiting instructions, and I wouldn't fault a pro se litigant. We're not specifically requesting one, but two day case, three witnesses. The jury was not far away from the evidence from the got the limiting instruction. What's your view of that? Yes, your honor. The judge did an admiral job of protecting Mr Day in trial. Personally, the jury instructions that were provided at the close of evidence was concerning F. R. E. 609 whether felony convictions could be used for impeachment purposes. There were no instruction provided at all concerning the prior bad bad act evidence. What that evidence could be used for the lawful purposes that the jury could use for and because the jury could use that information, for example, to make wrongful inferences about Mr Langley credibility or his aggressiveness or his propensity. That's why Mr Langley substantial rights. There was a reasonable probability that the outcome has been affected. I see that I surpassed my over the limit here. If I could reserve the rest of my time for a photo, the panel is no longer questions. You were not over your limit. You have time for rebuttal. So thank you. Thank you. And we'll hear from Mr Longyear. You're muted, Mr Longyear. You're moved. Now, sorry. May it please the court, I'm Van Longyear. I represent the appellee in this case. I'm not sure after listening to that opening oral argument, whether or not it's still being contended that the fact of two criminal convictions shouldn't have been admitted. I mean, obviously it's our position that the first criminal conviction was central to this case. It's the reason why he was on probation. And it was admitted, I think, during the course of the trial by Mr Langley. And also he admitted that he was serving time for a second conviction. So I think those two convictions, the fact of the convictions, shouldn't be an issue. The next question is whether or not the nature of the first conviction should have come in, that is spousal abuse. And, you know, the peace officer here was facing a very difficult situation. And that criminal history, that violent felony was part of the totality of the circumstances that the officer was aware of before he went and put his hands on the plaintiff. And I can tell you, I mean, I would think that there's nobody in this Zoom, if you had your chance to pick, when you are going to go up by yourself to a bigger, taller person in the middle of the night and put your hands around that person to go pat him down for weapons and contraband, you would like to know, I think we would all pick, if we had our druthers, a nonviolent offender versus a violent offender. And the fact that he's a violent offender is something that increases the threat meter to the officer on the scene and colors the lenses through which he will evaluate the conduct of the person that he's in terms of determining if, when, and how much force he's going to use. Langley ran the identification, I'm sorry, Collegio ran the identification of Langley and discovered this information before he ever put hands on Langley and before he drew his taser and before he fired his taser. And it's an, it's an absolute part and one of the totalities of the circumstances that a jury should consider in deciding whether or not excessive force was used under the circumstances. Secondly, and the plaintiff admitted the transcript, the report that reported this colloquy between Collegio and dispatch, and that's P202, the plaintiff put that in evidence subject to the redacting his margins. And in that document has the, the offending or the commitment offense of spousal abuse. So the plaintiff put it in evidence. It's part of the totality of the circumstances. It certainly was not error for Mr. Lauber to mention it and or for that to be admitted in the case. Lastly, the second issue of another instance of spousal abuse, I think the properly identifying the, the basis for the admissibility of that. It came in as a result in direct, directly as a result of Mr. Langley opening the door. This, despite the fact, and it's very clear in the record that the court at the beginning of the case, just a day before told him to be very careful, do not go into your criminal background. If you do, Mr. Lauber may be able to go into it. In spite of that warning by the trial court, Mr. Langley sought to gild the lily and argued his character for nonviolence. And so when that came in, he's the one who asked Mr. Vacca and mentioned the fact that he had three revocations. And, and then also said, and it wasn't just limited to, to his positions with the cop. It says, he says, anywhere in my history, do I have assault on police officer, whether it's in CDC County jail that you're aware of any, because you have my whole file. That's not my MO. And so I'm sorry for a, for a trial judge, for a trial attorney, when they hear that there's hearing the plaintiff painting a picture of nonviolence. And so his, the questions by Mr. Lauber asking about the reasons for those revocations is 100% in direct response to the was admissible. It was not error at all. What is your best case for that, Mr. Longyear? I'm sorry. What is your best case for that argument? The one I just said, I think. And with that, unless there's questions, I think I've covered it and I'm going to be beating a dead horse here. So I'd submit it. All right. Thank you, counsel. Mr. Yu. Your Honor, Mr. Langley is not arguing the prior felony convictions that led to the search condition leading to the arrest in this case. Your Honor is the plain error. The plain error occurs at ER 359. The admission of evidence concerning the nature of Mr. Langley's prior probation violation, not felony conviction, prior probation violations for methamphetamine possession, as well as spousal battery. And as to the opening the door doctrine, Your Honor, this court has not interpreted the opening of the doctrine in the way that defense counsel discussed it. Evidence, for example, in weed, evidence that an officer responded to notice ordinances in the past does not open the door to introduction of other disciplinary incidents. Or for example, in the Bay testimony that a defendant stating he's a legitimate businessman does not open the door to questioning about other lawsuits against him. And because Mr. and I see that my time is out, I, for the reasons discussed in this case, Your Honor, I argue that Mr. Langley has shown that admitting this evidence was plain error and the court should vacate the judgment and remand for a new trial. Thank you, Your Honor. All right. Thank you very much, Mr. Yu. And I want to thank you and your firm, Covington & Burling, for representing Mr. Langley pro bono on the briefs and today. Thank you very much. And thank you for the nice job of representing him. Thank you. Langley v. Collegio will be submitted.
judges: Wardlaw, Bea, Rosenthal